## Case No. 2,851.

### CLARKE v. The FASHION.

[2 Wall. Jr. 339.][2]

Circuit Court, E. D. Pennsylvania. Oct. 30, 1852.

#### ABANDONMENT IN ADMIRALTY.

1. Where a vessel is injured and sunk by collision in such a place, or under such circumstances, that for a small sum of money in comparison with the value of the vessel and cargo, she can be raised and repaired and the cargo recovered with slight damage, her owners have no right to abandon her and claim for a total loss.

[Distinguished in The D. Newcomb, 16 Fed. 277.]

2. The doctrine of abandonment as connected with cases of insurance, has not been imported into courts of admiralty.

The steamer Fashion had run very negligently into a small river sloop, the Syrian, of 43 tons, owned by Clarke, and had injured her hull and stranded her in the mud near one of the Philadelphia docks. As she lay keeled over, the damaged side of her

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by John William Wallace, Esq.]

was partially above water even at high tide, and at very low water a part of her keel fore and aft was exposed. Not having been much injured, she was thus in a position capable of being raised and repaired without great difficulty or cost. She was a common coal sloop, with a cargo of coal worth at most $225, which was not essentially injured by the submersion; though rendered dirty and less saleable; a small part also, which had been on deck, being lost. The owners of the steamer raised and repaired her; the cost of the raising being $150, and that of repairing her $50: and this, with the loss of $20 in bank notes which had been in the cabin; the injury or destruction of her sails, (not new) and whatever damage such a vessel and cargo would suffer from being "from four to seven days" under water as it came and went with the tide, and whatever loss might occur by the detention—all which the owners of the steamer asked to have ascertained and were willing to pay—appeared to constitute the whole loss resulting from the accident. The value of the sloop before the accident was about $1,600. Clarke, her owner, would not take her, thus repaired; but insisted upon abandoning her to the steamer as a total loss. She was accordingly now lying idle at the wharf; and whether she could be thus abandoned by Clarke insisting on her value, was the question before the court. The district court was of opinion and decreed that she might be.

Mr. Donnegan and Mr. Kane, for sloop.

The Columbus, 13 Jur. 285, is in point. There, the Tryal; a fishing smack, had been run down by the Columbus, and the last vessel having been condemned generally in damages and the matter referred to the registrar to assess them, the whole value of the smack was allotted by that officer and his merchants; but nothing was allowed by them for wages and victualing, nor for net profits for the employment of the smack. After the collision, the smack had been raised at the expense of the Columbus, and part of her stores, apparel and furniture saved; and she was now lying in harbour repaired. No exception appeared to have been taken originally by the owners of the Columbus to the registrar's report allowing full value; but the owners of the smack having excepted to the report because there was no allowance for wages, victualing and profits, the owners of the Columbus in turn excepted to being made to accept an abandonment at all, and to pay full value as for one. They insisted that under a decree of general condemnation merely the registrar had made a mistake in forcing the smack upon them and allowing as for a total loss, "and without regard to the hull of the smack or the stores," &c.: "that the smack might have been repaired, and put into a fit and serviceable condition in all respects, 'within a month after the collision at a moderate expense;' and that

they were not liable, under the decree of the court for any other charges or expenses in respect of the damage than the charges and expenses which would have been incurred in repairing her and obtaining possession of her stores, &c.: and that all further loss and expenses were incurred by the owners' not taking possession of and repairing the smack, as he ought to have done." The reply made by the owners of the smack alleged that the owners "had a right to renounce and disclaim all title to the smack and stores." The exact point now before us was therefore raised on the pleadings, and directly in issue.

The court, Dr. Lushington, after casting out some speculations not very relative to his decree, says "On the whole I think the registrar and merchants have come to a just and equitable conclusion." And the reporter considered the point now before us as decided, for he says in his syllabus: "The owners of the ship doing the damage, raised, at their own expense, the vessel sunk, and offered her to her owner, who claimed as for a total loss; he refused to take her:—Held, that the owner of the sunken vessel was not bound to take her, and might proceed and recover as for a total loss."

John Fallon, for steamer.

The Columbus [supra] is really an authority in our favour, though cited with some apparent show against us. In the 1st place: the vessel appears from Dr. Lushington's opinion, to have been "sunk at sea," or on the sea coast. The extent of the injury as compared with her value, is not stated, but it must have been large, for it was not alleged even by the Columbus, that the smack could have been put into a serviceable condition in less than "a month after the collision;" and Dr. Lushington's opinion would indicate that it was so bad a case, that she was in danger, after the accident of being "utterly destroyed." He refers to the "state she was in," after raising, as obviously bad: and states that it was alleged she could have been repaired "at much less than the sum allowed;" i. e. much less than her whole value. 2nd. The owner of the Columbus seems to have been content with the registrar's decree, as it was made by that officer and the merchants. "He would not," says Dr. Lushington, "have disputed the report unless it had been objected to in the first instance by the owner of the smack." He had disputed it, therefore, only to have it stand. He disputed it as a defence against the smack's attempt to disturb it: and to balance the alleged error of the registrar in his favour, if there was one, by another not alleged, which was certainly against him. Dr. Lushington seizes this fact, and it is manifest that he did not mean to decide, as on a common law demurrer, the point which it may be admitted the pleadings technically raised, and was so far, "in issue." Ancient,

common law, technical pleadings are not the forms of the admiralty, nor are the doctrines derived from their character applied as of course to the forms of this court. Dr. Lushington decides his case upon a natural equity; and somewhat as this court did in Stimpson v. The Railroads [Case No. 13,456], where they refused to disturb a verdict, because a blunder in one way was balanced by another blunder, in another. "On the whole," he says, "I think the registrar and merchants have come to a just and equitable conclusion." The processes by which they reached it were obviously not so satisfactory, and the difficulty was in regard to the point for which the case is cited on the other side as an authority. Speaking of "the objection by the owners of the smack," he says, "I have no desire to disturb the report on that ground." But speaking of the objection by the owners of the Columbus, he speaks differently; and there it is that he indulges "in speculations" which, though "not very relative to his decree," are very relative to the grounds of it, and to this and other cases in which his opinion might be cited. "With regard to the other branch of the case," he says, "I mean the objections taken by the owners of the Columbus—I admit the case to be one of great difficulty, in which it is impossible to lay down any general principles; and I am reluctant to make remarks that might lead to litigation in future cases, but I entertain no doubt whatever, as to the true principle on which we ought to act. I have no intention of importing into this court the principles that apply to insurance cases, with regard to abandonment. The rule on which I must proceed is this: if a vessel is sunk at sea, it is not incumbent on her owners to go to any expense whatever, for the purpose of raising her, thus incurring the risk of failure in bringing her to a place of safety. But I apply this only where a vessel is sunk, not where there is a chance of bringing her safe into port; for where a vessel is only partially damaged, and there is the slightest chance of bringing her into port, provided the expense does not exceed the value of the ship, the effort must be made." And while he says that on the whole, the registrar and merchants had come to an "equitable" conclusion, which he would not refer back; he says also, that he is not without doubt, what course either or both parties ought originally to have pursued. And he argues and speculates thus: The vessel having been "sunk at sea," her owner was under no obligation to raise her. The owner would, however, have run the risk of failing in a suit, if he chose to leave her, to sue here. But the owners of the Columbus did raise her, and then offered her to her owner, in "the state she was then in." And his honour thinks that if they had proceeded formally, each party would have applied for a sale, and that the proceeds might have been brought into court. Going back,

however, to a general, though irregular, equity, reached by the registrar, he will not disturb it.

GRIER, Circuit Justice. The doctrine of abandonment, as connected with cases of insurance, has never been imported into courts of admiralty, and has no application to cases of collision. Where a vessel is injured by collision at sea, and then sunk, the owners are not bound to risk a greater loss than that of the vessel and cargo, on the mere possible chance or speculation of saving something, by endeavours to raise her, and are entitled to recover to the whole extent of their loss. But where she is only partially injured, and there is the slightest chance of bringing her into port, the effort must be made. The injured party cannot increase his claim for damages by a voluntary abandonment of his property, and make a profit on his own negligence. He cannot compel the owners of the colliding vessel to become the purchasers of his injured vessel, where she is only partially injured. His abandonment of his own property, confers no title on the offending party, who has no right to take possession or assume any ownership over a vessel, because he has injured it by collision. It is true, it would be his duty and policy to assist the injured vessel, if in his power, and to help save her, whether he should be ultimately liable for the injury or not.

The measure of damages in cases of collision, is the sum it would take to restore the injured vessel, and make her as good as she was before the collision. To this may be added, the loss of the daily hire of the boat during the time it would necessarily take to repair her, in the nature of demurrage. This amount is not to be decreased by introducing the rule of insurance cases, of a deduction of new for old, nor increased by consequential speculative damages, much less for those which are the consequence of the libellant's own negligence or voluntary dereliction of his property, and endeavours to convert a partial into a total loss. Collisions are daily occurring in our crowded ports, in which small sailing vessels are injured by steamboats. In such cases the steamboats are generally held liable for the damage. But I cannot countenance the doctrine, that if by such collision a hole is knocked in the side of a sloop or schooner, which causes her to sink in port, within a few feet of the wharf, where assistance can be obtained and the vessel raised and restored for a sum not exceeding eight or ten per cent. of her value, that the owner of such vessel shall abandon her, and convert a small injury into a total loss, and thus sell his vessel to the owners of the steamboat, or leave her to perish, without the slightest endeavour to save her.

Yet such is the case before us. The sloop is partially sunk, in port, close to the wharf, where persons are ready and willing to raise her for $150, and repair her for $50 more;

nevertheless, the libellant, instead of endeavouring to save his vessel, runs off to the admiralty and files his libel for a total loss, under pretence of abandonment. And when the respondents raise the vessel for him, and when she can be repaired for less than fifty dollars, he refuses to have anything to do with her, and leaves her tackle to the mercy of thieves, and her hull to rot from the effects of the weather. If a case could be produced which affirms the doctrine, that under such circumstances, the libellant should recover the whole value of his vessel, I should not hesitate to dissent from it. The case of The Columbus, 13 Jur. 285, relied on at the bar, supports no such doctrine. There the vessel was sunk at sea—the mariners could not bring her into port, and were forced to abandon her. And although the defendants did afterwards raise her, the court decided that, although the libellants were bound to use every endeavour to bring her into port, yet they were not bound to risk money, in uncertain attempts to raise a wreck at sea. The case is no precedent for the conduct of the libellant in this case: nor can he be permitted to speculate on the accident or misfortune, and compel the respondents to pay damages incurred by the libellant's negligence and folly. It is enough if the owners of the steamboat have to pay the damages consequential on the negligence of their servant, without being liable for those voluntarily and unnecessarily caused by the libellant. This case is therefore referred to the clerk of this court, to assess the damages according to the principles we have stated, with directions to examine and report any further testimony which may be produced on the subject.